[Civ. No. 57840. Second Dist., Div. Four. May 6, 1981.]

MONTGOMERY ELEVATOR COMPANY,
Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

COUNSEL

Jack B. Silver and Joel T. Guthrie for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Appellant.

OPINION

**FILES, P. J.**—This is an action to recover a portion of the sales taxes for the period from January 1, 1961, through December 31, 1967, which the defendant board had assessed and which plaintiff had paid. The case was heard and decided by the superior court upon a stipulation of facts. The result was a judgment awarding to plaintiff a portion of its claim, from which both sides have appealed.

Plaintiff is a construction contractor specializing in the construction and installation of elevator systems. Each of these systems is built to meet the special requirements of the building in which it is to be installed. The price charged for an elevator system is a lump sum which includes the installation of the system as a part of the building. Under the sales and use tax law, the tax is imposed upon the sales price for which tangible personal property is sold, excluding (among other things) the amount charged for labor and services rendered in installing the property sold. (Rev. & Tax. Code, §§ 6011, 6051.)

The problem here is to determine what portion of the lump sum received by plaintiff is the "sales price" for the sale of tangible personal property.

During the period involved in this case plaintiff timely reported tax to the board "on a measure greater than the acquisition cost of the property required for the elevator installation performed during that period." The board audited plaintiff and determined that the plaintiff had underpaid.

The records examined by the board's auditor included plaintiff's estimates developed prior to bid, from which the auditor determined a "factory selling price," which included all anticipated contract costs and profit.

This case involves the board's treatment of two kinds of components which will be discussed separately.

## (1) Self-manufactured Components

■ Raw materials, including steel bars, shapes, castings, cables, fastenings, etc. were acquired by plaintiff for the manufacture at its central facility of items described as counterweights, sheaves, jacks, buffers and car platforms. These items are unique in that they are manufactured in conformity with the specifications provided by the architect for the building in which the elevators will eventually be installed. Thus such components are not readily available from any other source. The parties have agreed that neither has been able to ascertain any prevailing price at which installing contractors generally would be able to obtain such items.

Plaintiff's contention, as stated in the stipulation of facts, is "That of the items identified by Board as 'fixtures which are self-manufactured by Montgomery for inclusion into the elevator system' are to be taxed based on the measure of the acquisition cost of the material, the direct labor expense and the acquisition cost of the material, the direct labor expense and the overhead attributable only to the manufacturing operation."

The trial court held that plaintiff was not entitled to a refund of sales taxes paid on these components.

We note that plaintiff's argument, with respect to the self-manufactured components, does not criticize the board's computation except to assert that the "sales price" should be based only upon certain cost items, which do not include all of the costs used by plaintiff in making up its bid estimates or the estimated profit.

The board's position is expressed in its ruling 11 and bulletins 67-8 and 67-9 (which are now superseded by Cal. Admin. Code, tit. 18, § 1521).

Ruling 11, subdivision (c), states "Contractors are retailers of 'fixtures' which they furnish and install and tax applies to the retail selling price thereof; which in the case of lump-sum construction contracts is regarded as the cost price of the fixtures to the contractors."

Courts have approved the application of that rule to contractors who manufacture and install elevators. (*Oliver & Williams Elevator Corp. v. State Bd. of Equalization* (1975) 48 Cal.App.3d 890, 894 [122 Cal.Rptr. 249]; *Honeywell, Inc.* v. *State Bd. of Equalization* (1975) 48 Cal.App.3d 907, 914 [122 Cal.Rptr. 243].)

Bulletin 67-8 gives several methods of measuring the price of fixtures installed by manufacturers under lump-sum construction contracts. One method is stated as follows:

"Determination of Prevailing Price

"Sometimes the value placed on fixtures by a contractor-manufacturer who does not make sales of like fixtures to other contractors can be ascertained from contracts, price lists, bid sheets or other records. If that value is not less than the manufactured cost of the fixtures, it may be accepted as the 'prevailing price' at which the fixtures would be sold to other contractors."

The bulletin then goes on to explain that if a "prevailing price" cannot be determined by that or other means, manufacturing cost can be used.

Inasmuch as plaintiff's records did show the price computed for the purpose of bidding, the board made use of that to establish a "prevailing price."

In *Honeywell, Inc.* v. *State Bd. of Equalization, supra*, 48 Cal. App.3d 897, 903, the supplier of temperature control systems contended that its sales tax obligation should be measured by its acquisition cost of the materials at the time and place when and where acquired. The court rejected that contention, saying at page 904: "If Honeywell had packaged its 'control devices' for a particular building into a single package and had sold that package to an air conditioning subcontractor (other than Honeywell) for installation in the building, no one would seriously question that Honeywell would have thereby made a retail sale of tangible personal property and that the amount of the 'sales price' should be included in Honeywell's gross sales for purposes of computing sales tax. But Honeywell here argues that the result should be different if in addition to selling its control devices it also serves as the installing subcontractor and the 'sales price' of the control devices and the sales price for the installation services are commingled and stated as only one

price for both the control devices and the services of installation. Such commingling may present an accounting problem of segregation but the legal taxable consequences do not change."

The use of plaintiff's bid sheets, from which the board's auditors calculated all anticipated contract costs and profit is a realistic means of determining the "retail price" of the components or fixtures upon which the sales tax is assessed. In an open market a sales price would ordinarily be calculated to include all of the seller's costs and a profit. If the components which plaintiff manufactured at its central facility were to be sold to another contractor for installation, one would expect the sales price to include all costs and a profit. As the *Honeywell* opinion pointed out, the "sales price" should not be different because the manufacturer would later install the fixture.

We conclude that the trial court was correct in denying any refund with respect to the self-manufactured components.

### (2) *Components Assembled at the Central Facility*

Plaintiff acquires various electrical switching and controlling devices from vendors or manufacturers in a finished condition. At the central facility plaintiff mounts selected control fixtures on a panel to be enclosed in a steel cabinet so as to facilitate onsite preparation. The panels on which the fixtures are mounted and any cabinets required are purchased by plaintiff prefabricated in their completed condition, ready to accept the mounting of the fixtures. The fixtures are mounted or attached to the panel by spring devices or by screws. The stipulation of facts states: "The only labor performed by Montgomery to such selected control fixtures is that of mounting them in such boxes or cabinets at the central facility." Each of the fixtures in the control group performs the same function that it was designed to perform when purchased by plaintiff. Each fixture in the control group retains the same characteristics, configuration, and function that it had prior to its inclusion in the cabinet.

Plaintiff's contention with respect to this kind of components is as follows: "Labor or services cost attributable to the combining or mounting of tangible personal property, identified by the Board as fixtures, on panels, sub-bases or within cabinet enclosures at Montgomery's central facility is to be considered as labor required for the application or installation of the property sold. Such labor or service is

to be considered as labor or service required for the creation of a structure on land and not subject to the imposition of any sales tax. The property identified by the Board as fixtures to be incorporated in a structure should be taxed on a measure of the cost to Montgomery as the installing construction contractor.

"If plaintiff's contention as stated above is correct, plaintiff is entitled to a refund of $144,777.00 plus interest as authorized by law."

The trial court agreed with that contention and gave judgment for plaintiff in the amount of $144,777 plus interest.

Revenue and Taxation Code section 6011, which defines "sale price" for the purpose of the sales tax law, provides: "'Sales price' does not include any of the following:

". . . . . . . . . . . . . .

"(3) The amount charged for labor or services rendered in installing or applying the property sold." (Subd. (c) (3), formerly second subd. (c).)

Ruling 11 distinguishes between "materials," such as brick and lumber, which lose their identity in the construction of a building and "fixtures," which are defined as "things which are accessory to a building and which do not lose their identity as accessories when placed or installed."

It appears to be the position of plaintiff that, since the switches and other electrical components are "fixtures," the labor and service attributed to combining these "fixtures" with other components at the contractor's central facility (in this case in Moline, Illinois) is a part of the "installation" of the fixture; and hence, in plaintiff's view, should be classified with the services performed in attaching these fixtures to the realty at the jobsite.

The stipulation of facts does not reveal the kind and amount of labor, engineering or other services involved in mounting the "tangible personal property" on panels within cabinets. Nor does the record reveal to us the specific costs so allocated by the board's auditors which were not included in plaintiff's computation. The record does indicate, by the amount of money involved, that the difference is substantial. The par-

ties have agreed that excluding that service cost from the "sales price" would reduce plaintiff's sales tax liability by $144,777. The economic value of the cabinets, panels and subbases with the fixtures attached is evidently much greater than the price which plaintiff paid for the components. If these assembled and mounted components had been sold by plaintiff to another contractor for installation, the price surely would have taken into consideration the cost of the services required to put them together at the central facility. The reasoning of *Honeywell*, quoted above, is applicable here as well.

Plaintiff strays from the issue in emphasizing that the work performed at the central facility in joining a number of components on a single panel or in a cabinet did not change the function of any of these components. Function is not relevant to this sales tax question. The question which the board was required to decide was the retail price to be attributed to these subassemblies before they were installed as a part of the realty.

It was not unreasonable for the board to establish a sales price for these assembled components by taking into consideration the service costs incurred by plaintiff at its central facility, and, to rely upon the bid sheets and other records of plaintiff to establish a realistic "sales price" for these assemblies in the condition in which they arrived at the jobsite.

The judgment is reversed with instructions to enter judgment for defendant. Defendant shall recover costs on appeal.

Kingsley, J., and Woods, J., concurred.

A petition for a rehearing was denied May 26, 1981, and the petition of plaintiff and appellant for a hearing by the Supreme Court was denied July 15, 1981.