[Civ. No. 59982. Second Dist., Div. Five. Feb. 11, 1982.]

HONEYWELL, INC., Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

**COUNSEL**

Jack B. Silver for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Neal J. Gobar, Deputy Attorney General, for Defendant and Respondent.

OPINION

HASTINGS, J.—This is an action by Honeywell, Inc. (Honeywell), appellant, for refund of sales and use tax for the years 1964-1968. After a judgment in favor of defendant State Board of Equalization (the Board) denying most of the refunds, Honeywell appeals.

## STATEMENT OF FACTS

The record in this case does not permit a statement of facts that graphically describe the various transactions upon which Honeywell's claims for refund are based. Instead the pleadings, the briefs to the trial court and the briefs to this court describe in generalities several different types of transactions which raise specific legal issues without detailing the facts involved. There are four kinds of transactions where Honeywell claims it paid sales or use taxes under protest. In this introductory portion of the opinion we give a brief description of the nature and issue involved in each situation.

The first type of transaction concerns Honeywell's leasing activities. Honeywell leased to numerous large California corporations and businesses test instrument equipment and electrodata processing equipment. A use tax is chargeable based on the rental paid by the lessee. The law imposes a duty on the lessor to collect the tax. The Board through its audit staff had audited Honeywell's lessees and determined that the lessees had not paid the use tax on the leased property. The lessees had no receipts that they had paid the use tax and Honeywell had no receipts or records to prove payment by the lessees. Honeywell paid the taxes under protest. In this action for a refund on the taxes paid Honeywell contends the Board had the burden to prove that the lessees had not paid the tax. The Board argues that Honeywell had this burden of proof. The trial court agreed with the Board.

The second series of transactions involve self-manufactured fixtures that Honeywell as a construction contractor installed under lump sum construction contracts. Such fixtures or similar fixtures are not sold on the open market. The Board determined that Honeywell had underpaid its tax on the sale of these fixtures and based the tax upon Honeywell's "transfer costs" which appeared in its construction estimate work sheets. Honeywell contends that this standard was improper because it does not equate to a "prevailing market price."

The next or third type of transactions involve Honeywell's sales of tangible personal property to customers who in the regular course of their business claim to have resold the property. In such a sale the burden is on the seller (Honeywell) to establish it is not a retail (taxable) sale which can be established by the seller obtaining a resale certificate from the purchaser. On these transactions the Board levied a tax on $23,932 for the taxable period in issue. Honeywell did not take from its purchasers any resale certificates. After the tax was asserted by the Board, Honeywell mailed questionnaires to all of its purchasers and claims the answers to these questionnaires by the purchasers established that the sales were for resale and therefore the presumption under Revenue and Taxation Code section 6091 was overcome.[1] Honeywell contends the trial court erred when it permitted the presumption of taxability to control because its evidence effectively rebutted the presumption.

The fourth and last issue involves a transaction with the Drever Company of Bethayres, Pennsylvania. Invoices indicate that Honeywell received from Drever some kind of an installation of tangible, personal property costing Honeywell $37,233. A use tax was charged to Honeywell.

Honeywell claims the personal property delivered to it from Drever was not completed and fully assembled and that further labor and material in connection with the property was contemplated; therefore, no tax was due.

DISCUSSION

1. *The Lease Transactions.* ▮▮▮ The sole issue here is one of burden of proof. Honeywell contends that the state audits the books and records of its lessees (it was such a series of audits that led to the assertion of use taxes in the present case) and these audits place the Board in a better position to determine whether the lessees had paid the tax than Honeywell. Honeywell states it cannot audit its lessees records and

---

[1]Section 6091 provides: "For the purpose of the proper administration of this part and to prevent evasion of the sales tax it shall be presumed that all gross receipts are subject to the tax until the contrary is established. The burden of proving that a sale of tangible personal property is not a sale at retail is upon the person who makes the sale unless he takes from the purchaser a certificate to the effect that the property is purchased for resale."

therefore it is at a disadvantage when the burden is on it to prove that the lessee has not paid the tax.

The Board in response to Honeywell's argument first notes that it is quite simple for Honeywell or any lessor for that matter to establish that the lessee has paid the use tax by requiring the lessee to furnish it a copy of the paid tax receipt.

The law as cited to us by the Board supports the trial court's determination that the burden was on Honeywell. First, decisional law in numerous refund cases places this burden on the taxpayer. In a suit for refund of tax, the burden of proof is on the taxpayer. (*Flying Tiger Line* v. *State Bd. of Equal.* (1958) 157 Cal.App.2d 85, 99 [320 P.2d 552].) The taxpayer must not only prove that the tax assessment is incorrect, but also he must produce evidence to establish the proper amount of the tax. (*People* v. *Schwartz* (1947) 31 Cal.2d 59, 64 [187 P.2d 12]; *Maganini* v. *Quinn* (1950) 99 Cal.App.2d 1, 8 [221 P.2d 241].) ■ In an action for refund, "the taxpayer has the burden of proof to show that he is entitled to his claim. He cannot assert error and thus shift to the state the burden to justify the tax. . . ." (*Hall* v. *Franchise Tax Board* (1966) 244 Cal.App.2d 843, 848 [53 Cal.Rptr. 597].)

■ Second, there are specific provisions of the Sales and Use Tax Law which place the burden of establishing nontaxability on the taxpayer. Section 6091 provides: "For the purpose of the proper administration of this part and to prevent evasion of the sales tax it shall be presumed that all gross receipts are subject to the tax until the contrary is established."

Section 6241 provides: "For the purpose of the proper administration of this part and to prevent evasion of the use tax and the duty to collect the use tax, it shall be presumed that tangible personal property sold by any person for delivery in this State is sold for storage, use, or other consumption in this State until the contrary is established. The burden of proving the contrary is upon the person who makes the sale unless he takes from the purchaser a certificate to the effect that the property is purchased for resale."

Third, the foregoing authorities specifically imposing the burden of proof upon the taxpayer are supported by common sense. The taxpayer (and not the tax collector) creates the transaction which is the subject

of the inquiry. He has the power to determine the nature of the transaction, to create and retain detailed records or other evidence needed to prove its nature (and proper tax treatment). The taxpayer has also the power to destroy or conceal the records or other evidence which would establish the taxable nature of such transaction. Thus, as a matter of policy, the person having the power to create, maintain, and provide the evidence should carry the burden of proof. (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 760 [63 Cal.Rptr. 689, 433 P.2d 697].)

The Board concedes that there might be some taxable situations where the burden is not on the taxpayer but is on the Board; however, for the reasons stated above, and under the facts of this particular issue the burden should be on Honeywell. Honeywell, however, argues that such an approach is not realistic. This contention is based on the fact that the lessee is primarily responsible for the tax and the lessor is only a guarantor or secondarily liable. By placing the burden on the lessor Honeywell argues that a lessee in such a situation escapes liability. Honeywell cites cases that recognize that the lessor is secondarily liable but these cases do not directly address the problem of burden of proof under facts similar to our present case. Honeywell's argument is unpersuasive. As lessor it can control the taxable phase of the transaction from the very beginning. It can safeguard itself and prevent the lessee from escaping liability. We conclude that the trial court was correct in ruling that Honeywell had the burden of proving that its lessees had paid the use taxes in question.

2. ■ *The Self-manufactured Fixtures Transactions.* The best introduction to this issue is the trial court's finding of fact No. 8 which states as follows: "8. *Measure of Self-Manufactured Fixtures Under Ruling 11*: Plaintiff is in some of its activities a construction contractor and manufactures and installs the fixtures involved in this issue under lump sum construction contracts. Such fixtures or similar fixtures are not sold to contractors on the open market. The Board determined sales or use tax in respect of the fixtures involved in this issue on the basis of the 'transfer cost' of such fixtures as set forth in the documents prepared by Honeywell for its use in bidding on the lump sum construction contracts under which the fixtures were eventually installed. Honeywell has not established by preponderance of the evidence that it has paid excessive tax with respect to such fixtures. Use by the Board of the 'transfer cost' used in Honeywell's bidding procedure was a reasonable method of determining the prevailing price at which similar fixtures

would be sold to contractors. Bulletin 67-8 is reasonable and is not arbitrary, capricious, or without rational basis."

The beginning point for an analysis of this issue is ruling 11, subdivision (c) (Cal. Admin. Code, tit. 18, § 1921) as it read during the period in issue. Ruling 11, subdivision (c), provided that "the retail selling price thereof is the prevailing price at which similar fixtures in similar quantities ready for installation would be sold to contractors." During the period in issue general bulletin 67-8 reflected the Board's administrative interpretation of ruling 11. Bulletin 67-8 has been incorporated into title 18, section 1521 (the successor to ruling 11 (Cal. Admin. Code, tit. 18, § 1921)) as part of paragraph (b)(2)(B)2. Section 1521 provides for taxation of fixtures manufactured by the contractor and installed by him in the following order:

First, "if the contract states the sale price at which the fixture is sold, tax applies to that price." (§ 1521, subd. (b)(2)(B)2.a.)

Second, if no sale price is stated, it shall be deemed the cost price to the contractor determined in the following order:

a. First "the price at which similar fixtures in similar quantities ready for installation are sold by him to other contractors." (§ 1521, subd. (b) (2)(B)2.b.)

b. "If similar fixtures are not sold to other contractors ready for installation, then the cost price shall be deemed to be the amount stated in the price lists, bid sheets or other records of the contractor" (*id.*); or

c. Lastly, a buildup of costs from the manufacturer-contractor's records (similar to a manufacturing cost) plus a reasonable profit. (The regulation specifically states that jobsite fabrication labor must be included in the sales price.) (§ 1521, subd. (b)(2)(B)2.b.[6].)

It is Honeywell's argument that when there is "no prevailing price"[2] for the calculation of the sales tax on the fixtures in question, the Board could not use as a basis for the sales tax a "transfer cost" obtained from Honeywell's bidding documents without establishing that such transfer cost is equated to a market or prevailing price. Honeywell states that

---

[2]There was no prevailing price because the fixtures in question were not sold on the open market.

portions of the "transfer cost" include installation, marketing and engineering costs which are not taxable, therefore the standard is arbitrary in nature.

The trial court disagreed with Honeywell's argument. It found that the Board following bulletin 67-8 (now incorporated into § 1521) supplied the guidelines for determining what standard was comparable to the prevailing price when such a price did not exist. It found that the "transfer cost" of the fixtures involved which was used by Honeywell in its bidding procedures was a reasonable method of determining a figure that was equivalent to a prevailing price for the fixtures in question. The "transfer cost" of such fixtures was set forth in documents prepared by Honeywell for its use in bidding on the lump sum of the construction contracts. This would be consistent with section 1521, subdivision (b)(2)(B)2.b, which states that "[i]f similar fixtures are not sold to other contractors ready for installation, then the cost price shall be deemed to be the amount stated in the price lists, bid sheets or other records of the contractor." Use of such a standard or procedure has been approved in *Montgomery Elevator Co.* v. *State Bd. of Equalization* (1981) 118 Cal.App.3d 887, 891-892 [173 Cal.Rptr. 632].

There was sufficient evidence to support the trial court's finding. Honeywell's bidding procedure was to prepare an estimate in which the transfer cost of the fixtures and materials to be used, together with the sales tax measured by such transfer costs, estimated costs of labor, and other costs were totalled. A percentage of profit was then added to reach the bid price. Adjustments to transfer costs were sometimes subsequently made to meet competition. In other words Honeywell attempted to put a reasonable competitive price on its fixtures into its bidding process, i.e. its "transfer cost." Inasmuch as Honeywell's records did show the price computed for the purpose of bidding the Board made use of that to establish a "prevailing price." (*Montgomery Elevator Co.* v. *State Bd. of Equalization, supra*, 118 Cal.App.3d 887, 891-892.)

3. ▮ *The Sales for Resale Transactions.* Honeywell commences its argument on this issue by citing Revenue and Taxation Code section 6091, footnote 1, *supra*, that places the burden of proof, to establish it is not a retail sale, upon the person who makes the sale unless he obtains from the purchaser a resale certificate. Honeywell interprets this section as establishing a rebuttable presumption that permits the seller to overcome the presumption by means other than a resale certificate.

Honeywell had submitted to its purchasers questionnaires that sought to establish that the sales were for resale purposes. The Board did not find that this evidence rebutted the presumption and Honeywell claims it erred.

We reject Honeywell's argument on this issue. First, Honeywell had the option to request a resale certificate from the buyers at the time of the transaction. This was not done. Secondly, Honeywell could have collected sales tax reimbursement from the purchaser as part of its agreement and remitted this amount to the state. This was not done. Thirdly, Honeywell now says that it properly rebutted the presumption that the sales were for resale by submitting statements from its customers that such was the case and the Board erred in not relying on this evidence. There is no evidence in the record that the questionnaires submitted by Honeywell were sufficient to rebut the presumption. The trial court found that Honeywell had not established by a preponderance of *admissible* evidence that the sales were in fact for resale. On appeal the trial court's judgment is presumed correct and we cannot reverse unless error is clearly demonstrated to us. As with the trial court Honeywell has not met its burden on this issue on appeal.

4. ■ *The Drever Company Transaction.* Honeywell was charged a use tax for purchasing completed and fully assembled tangible personal property from an out-of-state manufacturer. Honeywell concedes that a use tax was proper if it was indeed completed and fully assembled tangible personal property. It argues, however, that the only evidence upon which the tax was based, was an invoice from the Drever Company that suggests that an obligation for labor and material was still contemplated, therefore it was not completed and fully assembled personal property.

The total evidence concerning the Drever transaction consists of exhibit three. This exhibit states that the items were "sold to Honeywell, Inc., 17300 South Western Ave., P.O. Box 171, Gardena, California 90247." It further states "shipped to same, c/o A.R. Pearson Co., 4720 E. 26th St., Los Angeles, California." The heading of the documents show "Drever Company, Red Lion Road & Philmont Ave., Bethayres, Pa., 19006." It states terms "90% of value of material and labor furnished in any one month, payable by the tenth of the following month. 10% payable on completion and acceptance, but not to exceed sixty days from date of complete shipment of material." The space on the invoice headed "F.O.B." is blank, as is the space headed "Ship via."

The trial court's finding of fact No. 6 states: "Plaintiff [Honeywell] has failed to establish by the preponderance of admissible evidence that purchase from the Drever Company was of installed equipment." Our review of this issue is to determine if the facts support the trial court's finding. Honeywell made no effort to produce any witnesses familiar with the transaction or explain its failure to attempt to establish a complete set of facts at the time the audit was performed when such documents and witnesses were probably available. Honeywell further failed to provide any evidence through other documents which would describe the transaction in more detail. The wording of the invoice is not crystal clear. We certainly cannot make an independent interpretation that would justify overturning the trial court's ruling. Inasmuch as Honeywell had the burden of showing nontaxability, we again cannot disagree with the trial court's finding that Honeywell failed to meet this burden.

The judgment is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.