[Civ. No. 24362. Third Dist. Sept. 2, 1986.]

COAST ELEVATOR COMPANY, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

## COUNSEL

Joel T. Guthrie, Countryman & McDaniel, Donald E. Oliver, F. Earl Bandy and Gayle A. Gutekunst for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Charles C. Kobayashi, Assistant Attorney General, Robert F. Tyler and Edward P. Hollingshead, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**CARR, J.**—This case presents the question of whether costs for labor and overhead attributable to work performed in the assembly of components of an elevator system prior to attachment to realty are properly subject to the sales tax. We conclude they are and affirm the judgment.

### FACTS

Appellant Coast Elevator Company (Coast) is a licensed contractor in the field of elevator construction and installation. Coast installs elevator systems

designed specifically for the buildings in which they operate. The price charged is a lump sum which includes the costs of the system components (which are either fixtures or materials) and charges for the labor involved in installing or affixing them to the building.

When Coast is notified its bid has been accepted, it purchases from various vendors all of the component parts of the elevator system. Those components arrive ready for installation and when installed by Coast are unchanged in form or function. Coast performs certain preinstallation assembly of components in order to facilitate their affixation to the structure. William Shrum, Coast's president, testified that workers at Coast's factory mounted certain components on panels with spring devices or screws. The panels themselves are prefabricated and when purchased by Coast are ready to receive the components which are mounted on them. The panels are then placed in prefabricated steel cabinets to facilitate on-site installation.

Respondent State Board of Equalization (the Board) conducted an audit of Coast's records and assessed sales tax on the sales price of certain portions of the elevator systems supplied pursuant to the lump sum contracts for all periods from April 1, 1965, through June 30, 1977. Specifically, the Board determined that Coast owed sales tax on that portion of costs for labor and overhead attributable to factory preinstallation assembly of components such as that described above. Coast paid the assessed amount, including interest and penalty, timely filed with the Board a claim for a refund, and when the refund was denied, commenced the instant litigation.

■■ ■■■■■ The trial court denied all relief to Coast and in its tentative decision held it was proper for the Board to consider Coast a manufacturer of fixtures because of the assembly labor performed at its own factory.[1] Coast appeals.

## DISCUSSION

California Administrative Code, title 18, section 1521 (hereafter section 1521),[2] provides that "Construction contractors are retailers of fixtures

---

[1]The trial court did not issue a statement of decision. However, the intended decision was sufficiently thorough that it might have been adopted as the statement of decision. (See *Wolfe v. Lipsy* (1985) 163 Cal.App.3d 633, 643-644 [209 Cal.Rptr. 801].) The intended decision was rendered in the form of an opinion and the judge's opinion may be used to help discern the grounds for the judgment. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 264, p. 271.) We thus use the intended decision in that fashion. Furthermore, the sole question we must resolve is whether Coast was properly classified as a manufacturer of fixtures within the meaning of the Sales Tax Act. This is a question of law and thus the failure to request a statement of decision is not fatal.

[2]Section 1521 is reproduced in pertinent part in appendix A, attached hereto.

which they furnish and install in the performance of construction contracts and tax applies to their sales of the fixtures." (§ 1521, subd. (b)(2)(B)1.)[3] As applied to contracts for the purchase and installation of elevator systems, the contractor is the retailer of those portions of the system which are considered fixtures. The sales price of the fixtures sold includes any services that are part of the sale but excludes any costs for labor or services rendered in installing the fixtures. (Rev. & Tax. Code, § 6011, subds. (b)(1), (c)(3).)[4] If the contract does not state the sales price of the fixture, as with lump sum contracts like those at issue herein, the sales price is deemed to be the cost price of the fixture. (§ 1521, subd. (b)(2)(B)2.)

When the contractor purchases the fixtures in completed condition, the cost price is the price paid by him for the fixtures. (*Ibid.*) But when the contractor is the manufacturer of the fixture, the cost price is deemed to be the price at which similar fixtures in like quantities ready for installation are sold by him to other contractors. (*Ibid.*) If similar fixtures in like quantities are not sold by the contractor, the cost price is the amount stated in price lists, bid sheets or other records. (*Ibid.*) If the cost price of fixtures manufactured by the contractor cannot be computed using any of these methods, it is deemed to be the aggregate of several factors including the cost of the materials, labor, overhead and profit as derived from the records of the contractor. (*Ibid.*) The cost price also includes jobsite fabrication labor and its share of manufacturing overhead. Jobsite fabrication labor includes assembly labor performed before a component or fixture is attached to the structure. (*Ibid.*)

 With regard to the elevators it installs, Coast contends it purchases only fixtures in their completed condition and its sales tax liability is therefore limited to the price it paid for the fixtures installed by it. As Coast purchases components designated as fixtures by section 1521, subdivision (a)(5) and installs them without changing either their physical form or their function, it asserts it installs fixtures purchased in their completed condition and the

---

[3]At all times relevant to this appeal either section 1521 or its predecessor administrative guidelines ruling 11 and bulletins 67-68 and 67-69 (now incorporated in § 1521) governed the sales tax liability of Coast.

[4]Revenue and Taxation Code section 6011 at all times here relevant provided: "(a) 'Sales price' means the total amount for which tangible personal property is sold or leased or rented, as the case may be, valued in money, whether paid in money or otherwise, without any deduction on account of any of the following: [¶] (1) The cost of the property sold; [¶] (2) [t]he cost of materials used, labor or service cost, interest charged, losses, or any other expenses; [¶] (3) [t]he cost of transportation of the property, except as excluded by other provisions of this section.

"(b) The total amount for which the property is sold or leased or rented includes all of the following: [¶] (1) Any services that are part of the sale. . . ."

proper measure of the sales tax liability is the price paid for the components. The Board determined Coast was a manufacturer of fixtures by virtue of the preinstallation labor performed in assembling at its factory certain components designated as fixtures and assessed sales tax on the cost of labor and the prorated share of overhead attributable to those operations.

The distinction between installation labor, which is not subject to sales tax, and labor attributed to the cost price of the fixture, which is subject to sales tax, is that the contractor is in fact the retailer of fixtures which he installs. (§ 1521, subd. (b)(2)(B)1.) Labor costs for installing the completed fixture are not part of the sales price and are not subject to the sales tax (Rev. & Tax. Code, § 6011, subd. (c)(3)) as they are costs for the *service* of installation and not part of the cost of the finished product sold. Labor costs for assembling or fabricating the fixture, by contrast, are properly subject to sales tax because they are a part of the cost of generating the finished product that is installed and thereby a part of the sales price of the fixture. (Rev. & Tax. Code, § 6011, subd. (a)(2).)

Coast claims the Board's method of determining taxable labor is dependent upon the order of installation and whether certain labor is taxable is governed by where and when it is performed. It urges that by assembling one complete fixture to another at the factory it does no more than connect fixtures which will be connected to one another after installation and the labor involved should be considered installation labor.

Coast fails to recognize that the difference in where and when the labor is performed provides the key to the distinction in tax treatment. The contractor is the retailer of the fixtures he installs. (§ 1521, subd. (b)(2)(B)1.) ▮▮▮▮▮ If he installs fixtures piece by piece in the elevator shaft, first attaching one component to the structure and then another, only the cost of the fixtures is taxable.[5] Were he to sell those components to another contractor for installation, no more than the value of the components in their unassembled form would be transferred and subject to tax upon transfer of title. (Rev. & Tax. Code, § 6006.) But if he preassembles fixtures into units and then sells those to another contractor for installation, the value of those assembled units would be greater than

---

[5]Black's Law Dictionary (5th ed. 1979) at page 574 defines "fixture" as follows: "An article in the nature of personal property which has been so annexed to the realty that it is regarded as a part of the land. . . ." When the installing contractor attaches to the structure one component which upon installation will be considered a fixture and then attaches to the fixture another component similarly classified, he *installs* the second fixture because he attaches it to a part of the land. The differences in where and when the fixture is attached are thus crucial to the determination whether the labor involved is in the nature of fabrication or manufacturing, or in the nature of installation.

the aggregate cost of the constituent parts and would reflect the labor spent in assembling them. The labor to assemble the units is a part of the cost of the new unit which is installed. Since that new unit constitutes a part of the cab or platform and its hoisting machinery, it is a fixture. (§ 1521, subd. (c)(6).) When it is installed, its sales price is taxable. (§ 1521, subd. (b)(2)(B)2.) Accordingly, its price includes the cost of materials and labor. (*Ibid.*) It is the sales price of the new unit which is taxable upon affixation to the structure and not just the cost of its component parts. The installing contractor is selling more than the individual component parts; he is selling a unit assembled from those parts with the labor costs for the assembly. There are undoubtedly several ways to provide a working elevator system, each of which involves labor in attaching fixtures to the structure. That labor is installation labor. But some of the ways will use more labor prior to installation than others. While all of the labor goes toward providing a complete elevator system, some methods require assembly or fabrication of fixtures from components before they are installed. To the extent one contractor uses more fabrication labor than another there exists a basis for a difference in sales tax treatment because the fabrication labor adds value to that which ultimately is installed. A sale occurs when there is a transfer of title or possession of tangible personal property for consideration (Rev. & Tax. Code, § 6006). As the contractor is the retailer of fixtures he installs, that sale must occur for sales tax purposes when the fixture is installed. At that moment the sale price of the fixture ready for installation must include any labor expended in preparing it for installation.

The focus of the inquiry is the sales price of that which is attached to the structure. The sales price of the preassembled panels includes labor used to fabricate them from their component parts. As determined at the time of attachment to the structure (which is the time of sale) the taxable value of the new assembled fixture includes the labor to put it together.

In determining that Coast was a manufacturer of fixtures, the trial court relied upon *Montgomery Elevator Co.* v. *State Bd. of Equalization* (1981) 118 Cal.App.3d 887 [173 Cal.Rptr. 632]. *Montgomery* held that under the same circumstances as in this case that costs for labor and overhead were not installation costs but were properly considered part of the sales price of the fixtures installed. (*Id.,* at pp. 892-894.) The position of the taxpayer in that case, like that of Coast, was that costs attributed to combining components (themselves fixtures under § 1521) were a part of the installation cost and thus not subject to sales tax. The court concluded that the economic value of the cabinets and panels with the fixtures attached was greater than the price of the components alone. If the preassembled components had been sold to an installing contractor, the sales price "surely would have

taken into consideration the cost of the services required to put them together at the central facility." (*Id.*, at p. 894.) The court held the result should be no different when the same contractor both sells and installs the fixture and the price of the fixture and the price of installation services are commingled into a lump sum for the entire contract. (*Id.*, at pp. 891, 894; see also *Honeywell, Inc.* v. *State Bd. of Equalization* (1975) 48 Cal.App.3d 897, 903 [122 Cal.Rptr. 237].)

Coast contends the reasoning of *Montgomery* is flawed as it based sales tax liability upon increased economic value. However the basis for the taxability of the costs in *Montgomery* was not, as Coast argues, the increase in the economic value of the assembled units. An increase in economic value occurs when fixtures (taxable) are assembled as well as when materials (not taxable) are fabricated. Moreover, an increase in value occurs when the elevator system is installed but installation labor is expressly not taxed. Were the contractor to sell the assembled units, the sales price would reflect the enhanced value. But the basis of sales tax liability is not the increase in economic value per se, but rather the *nature* of the additional value. That additional value is due to labor and overhead expended in making or fabricating a new fixture. Labor expended on assembly prior to affixation to the structure is part of the production cost of an item of tangible personal property which is affixed and thereby sold by the contractor. The fact that this item of tangible personal property is composed of smaller components which are themselves identified as fixtures does not transmute into installation labor the labor required to assemble those components. It remains labor used to fabricate the larger fixture which is affixed to the structure.

Section 1521 states jobsite fabrication labor and its share of overhead are to be included in the sale price of a fixture. "Jobsite fabrication labor includes assembly labor performed prior to attachment of a component or a fixture to a structure or other real property." (§ 1521, subd. (b)(2)(B)2.) The regulation unambiguously makes taxable assembly labor occurring before affixation of the fixture to the structure. That labor is fabrication labor precisely because it occurs *before* the fixture is attached to the structure. As a result, the nature of the labor expended in attaching one fixture to another occurs prior to the sale of the fixture assembly and is different from the nature of labor expended in attaching a fixture to the structure itself. This difference forms the basis of the distinction in sales tax treatment.

We perceive that this explains the *Montgomery* statement about increase in economic value. It is not the increase in value in and of itself but rather the increase in value at the time of installation—the time of sale—which provides the basis of sales tax liability. That increase in economic value is

attributable in part to labor which is different from that expended in attaching the fixture to the structure. Labor which occurs prior to attachment is properly included in the value, and thus the sales price, of the object which is ultimately attached.

Coast contends *Montgomery* does not apply to this case. The only difference between the facts in *Montgomery* and the facts in this case is that in *Montgomery*, the contractor's sales price was derived from its bid sheets. (See § 1521, subd. (b)(2)(B)2.) Here, because no bid sheets were available, the Board determined Coast's tax liability from the aggregate of several factors gleaned from their manufacturing records, as permitted by section 1521. (*Ibid.*) We agree with the reasoning and result of *Montgomery* and apply it in the case before us.

Coast concedes that if the Board is correct in its characterization of Coast as a manufacturer of fixtures the amount determined as owing is correct as well. It was not unreasonable for the Board to conclude Coast was a manufacturer and to establish the sales price of fixtures installed by it for purposes of section 1521 (*Montgomery, supra,* 118 Cal.App.3d at p. 894) and the Board's determination must be upheld.

### DISPOSITION

The judgment is affirmed.

Evans, Acting P. J., and Sparks, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 25, 1986.

---

### APPENDIX A

Section 1521 provides in pertinent part:
"*1521. Construction Contractors.*
"(a) Definitions:
". . . . . . . . . . . . . . . .
"(2) Construction Contractor. 'Construction contractor' means any person who for himself, in conjunction with, or by or through others, agrees to perform and does perform a construction contract. 'Construction contractor' includes subcontractors and specialty contractors and those engaged in such building trades as carpentry, bricklaying, cement work, steel work, plastering, drywall installation, sheet metal work, roofing, tile and terrazzo work,

electrical work, plumbing, heating, air-conditioning, elevator installation and construction, painting and persons installing floor coverings, including linoleum, floor tile, and wall-to-wall carpeting, by permanently affixing such coverings to a floor.

" . . . . . . . . . . . . . . . . . . . .

"(4) Materials. 'Materials' means and includes construction materials and components, and other tangible personal property incorporated into, attached to, or affixed to, real property by contractors in the performance of a construction contract and which, when combined with other tangible personal property, loses its identity to become an integral and inseparable part of the real property. . . .

"(5) Fixtures. 'Fixtures' means and includes items which are accessory to a building or other structure and do not lose their identity as accessories when installed. A list of typical items regarded as fixtures is set forth in Appendix B.

" . . . . . . . . . . . . . . . . . . . .

"(8) Lump Sum Contract. 'Lump sum contract' means a contract under which the contractor for a stated lump sum agrees to furnish and install materials or fixtures, or both. A lump sum contract does not become a time and material contract when the amounts attributable to materials, fixtures, labor, or tax are separately stated in the invoice.

"(b) Application of Tax.

" . . . . . . . . . . . . . . . . . . . .

"(2) Construction Contractors Other than United States Construction Contractors.

" . . . . . . . . . . . . . . . . . . . .

"(B) Fixtures.

"1. In General. Construction contractors are retailers of fixtures which they furnish and install in the performance of construction contracts and tax applies to their sales of the fixtures.

"2. Measure of Tax.

"a. In General. If the contract states the sale price at which the fixture is sold, tax applies to that price. If the contract does not state the sale price of the fixture, the sale price shall be deemed to be the cost price of the fixture to the contractor.

"b. Determining Cost Price. If the contractor purchases the fixtures in a completed condition, the cost price is deemed to be the sale price of the fixture to him and shall include any manufacturer's excise tax or import duty imposed with respect to the fixture prior to its sale by the contractor.

"If the contractor is the manufacturer of the fixture, the cost price is deemed to be the price at which similar fixtures in similar quantities ready for installation are sold by him to other contractors.

"If similar fixtures are not sold to other contractors ready for installation, then the cost price shall be deemed to be the amount stated in the price lists, bid sheets or other records of the contractor.

"If the sale price cannot be established in the above manner and the fixture is manufactured by the contractor, the cost price shall be deemed to be the aggregate of the following:

"[1] Cost of materials, including such items as freight-in and import duties,

"[2] Direct labor, including fringe benefits and payroll taxes,

"[3] Specific factory costs attributable to the fixture,

"[4] Any manufacturer's excise tax,

"[5] Pro rata share of all overhead attributable to the manufacture of the fixture, and

"[6] Reasonable profit from the manufacturing operations which, in the absence of evidence to the contrary, shall be deemed to be 5 percent of the sum of the preceding factors.

"Jobsite fabrication labor and its prorated share of manufacturing overhead must be included in the sale price of the fixture. Jobsite fabrication labor includes assembly labor performed prior to attachment of a component or a fixture to a structure or other real property.

. . . " . . . . . . . . . . . . . . . . . .

"(c) Particular Applications.

" . . . . . . . . . . . . . . . . . . . .

"(6) Elevator Installations. A large number of components are included in the installation

of an elevator system. Those portions constituting the cage or platform and its hoisting machinery are fixtures. The balance of the installation, if attached to a structure or other real property will generally be 'materials.'

"Similarly, installation of escalators and moving sidewalks are in part fixtures and in part materials.

"Following are examples of components constituting part of the cage or platform and its hoisting machinery, and which are fixtures:

"alarm bell
"cab or car
"car doors
"car platform and sling
"door hanger on cab
"door openers
"door operator on cab or car
"door safety edge on cab
"door sills on cab
"electronic door protector
"jack assembly
"motors
"power units and control boxes
"pumps
"pushbuttons on cab
"wire and piping (which are components of a fixture)[.]
"Following are examples of components constituting 'materials' when attached to realty:
"car guides
"casing section of jack assembly
"guide rails
"hoistway doors
"hoistway door frames
"hoistway door safety edge
"hoistway door sills and jambs
"hoistway door supports
"hoistway entrance
"pushbuttons on hoistway
"rail brackets
"sill, struts
"sound insulating panels on 'materials'
"structural steel (unless part of cab, car, or other 'fixture')
"valve strainer
"wire and piping attached to 'materials' . . . ."