[Civ. No. 43703. Second Dist., Div. Five. June 5, 1975.]

HONEYWELL, INC., Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

898

## Counsel

Karl F. Geiser and Clyde R. Maxwell for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Neal J. Gobar, Deputy Attorney General, for Defendant and Respondent.

## Opinion

LORING, J.*—On February 14, 1969, Honeywell Inc., a corporation, (Honeywell) filed an action against State Board of Equalization of the State of California (Board) on rejected claims for refund of sales taxes assessed and collected by Board during the period July 1, 1960, to June 30, 1968, in the aggregate sum of $800,000 which claims were denied by Board for the period July 1, 1960, to June 30, 1964 in an amount in excess of $113,884.80. Honeywell sought to recover the difference with interest. A second cause of action alleged that Board granted the aforesaid claims for the period July 1, 1964, to June 30, 1968, in the sum of $400,000 but that Board wilfully failed and neglected to issue notices of determination and has failed to pay said $400,000 with interest. The prayer sought recovery of $800,000 on the first cause of action and $400,000 on the second cause of action. Board answered and admitted that it had already refunded $113,844.80 for the period July 1, 1961 to June 30, 1964, and denied all other allegations of the complaint except for the execution or receipt of various documents such as claims for refund which were attached to the complaint.

By an amendment to the complaint filed February 13, 1973, Honeywell alleged that if Board's notice of denial of claims for refund for the period July 1, 1960 to June 30, 1964 did not constitute an approval of the claim for refund for the period July 1, 1964 through June 30, 1968, then the notice was a denial of all claims so that Honeywell had exhausted all of its administrative remedies. After nonjury trial, the court filed a memorandum of its intended decision, declaring that Honeywell was not entitled to recover for the reasons which will be discussed, *infra,* and directing Board to prepare proposed findings and judgment. The court made findings and conclusions of law adjudging that Honeywell had not overpaid its tax, that it was not entitled to a refund and that judgment

---

*Assigned by the Chairman of the Judicial Council.

should be entered in favor of Board. Judgment was entered accordingly. Honeywell appeals from the judgment.

## CONTENTIONS

Appellant contends:

### I

The trial court erred in finding 3 (CT p. 131 lines 10-26) in limiting the refund period in question in this lawsuit to the period commencing with the third quarter of 1960 and ending with the second quarter of 1964 and in excluding from consideration the remaining four years through the second quarter of 1968.

### II

The trial court erred in holding that the transactions here in question constituted sales of tangible personal property by Honeywell at retail.

### III

Assuming the validity of regulation 1521 entitled "Construction Contractors" (formerly rule 11) promulgated by the state Board, Honeywell was the consumer of "materials" used by it in installing its temperature control systems so that the correct measure of the tax is the cost to Honeywell of the *"material content"* only of the devices used in the system within the provisions of subparagraphs (a) (3) and (b) (1) of said regulation. Honeywell's temperature control systems and the components thereof are *materials* "which when combined with other tangible personal property loses its identity to become an integral and inseparable part of the completed structure."

### IV

The California Supreme Court and the Courts of Appeal have consistently held that the construction contractor is a *user* and *consumer* of personal property which he installs and is taxable only on the cost to him of material contents.

## V

The Board's Regulation 1521 (formerly rule 11—Appendix C p. C-1) and General Bulletin 67-8 (Appendix C p. C-5) issued pursuant thereto are vague, uncertain, ambiguous, conflicting and unreasonable and are, therefore, void on their face. They are also in conflict with the Board's Regulation 1615 (formerly rule 12—Appendix C p. C-8).

## VI

The case of *Gen. Elec. Co.* v. *State Bd. of Equalization* (1952) 111 Cal.App.2d 180 [244 P.2d 427], is no longer the law of the state insofar as it purports to uphold the validity of Regulation 1521 (formerly rule 11) and Regulation 1615 (formerly rule 12).

In its closing brief, Honeywell makes the following additional contentions:

I. The trial court erred in its findings of fact and conclusions of law to the effect that the transactions here in question were sales *at retail* by Honeywell of tangible personal property.

II. The opinion in *Coast Elevator Co.* v. *State Bd. of Equalization,* 44 Cal.App.3d 576 [118 Cal.Rptr. 818], filed in this court on January 15, 1975, is not controlling herein.[1]

III. An administrative body is without power to enlarge the scope of its authority under the statutes by its own administrative regulations.[2]

### FACTS

The court made the following finding of fact:

"5. Honeywell manufactures and sells devices used in controlling air temperature and air conditioning. In general these devices are small, sophisticated, well engineered, precision instruments which are fabricated and packaged at Honeywell's factories as complete units ready to install and function. For the most part these precision mechanical devices are operated electrically or pneumatically (or by a combination

---

[1] The opinion in *Coast Elevator* was filed after Honeywell filed its opening brief herein and before it filed its closing brief herein. A petition for hearing in *Coast Elevator* was denied by the California Supreme Court on March 12, 1975.

[2] Honeywell advances six subarguments in support of this proposition which for sake of brevity will be referred to in the discussion, *infra.*

thereof) and are activated by a change in temperature or humidity. They are designed to be attached to special panels, walls, pipes or air ducts (sheet metal conduits) of the building normally by bolts, screws or similar fasteners. Each can be individually and readily removed without damage to the building or anything else. These devices include temperature sensing devices (including thermostats, airstream sensors, waterline sensors and thermometers), humidity sensing devices (including humidstats), electric timing devices, transformers, relays, switching devices, gauges, control panels, damper motors, valve operators, flow meters and switches, recording devices, electric motors, and air compressors. These items for simplicity are hereafter collectively referred to as 'control devices.' "

Honeywell does not contend that there was no substantial evidence to support such finding. It merely contends that the court drew erroneous legal conclusions therefrom. The court also found that the plans and specifications for automatic heating and air conditioning systems (control systems) to be incorporated in the construction of a proposed building are normally prepared by independent architects and engineers other than Honeywell, although on occasion, Honeywell will cooperate in the planning when requested. (Finding 6.) The court also found that Honeywell entered into lump sum installation contracts under which it installs its control systems in buildings. (Finding 7.) The court made detailed findings regarding the manner of operation of the Honeywell control system, (Finding 8)[3] and its physical characteristics (Findings 9 and 10).[4] As noted Honeywell does not contend that such findings are not supported by substantial evidence.

[3] Finding 8 reads as follows:

"8. In a normal heating and air conditioning system, air is transported through the ducts from outside the building (or other sources) to openings at desired locations in the building where it is released into the rooms. Air flow is created by fans and controlled by dampers. The temperature and humidity of the air are altered by coils of hot and cold water in the ductwork. The coils are connected by pipes to boilers and refrigerator units, where the water is heated and cooled to the desired temperatures. Various dampers and valves are opened and closed and motors are stopped and started by certain of Honeywell's control devices. Other Honeywell control devices sense or report conditions (or times) and initiate the desired actions. Thus, the entire heating and air conditioning system operates automatically."

[4] Findings 9 and 10 read as follows:

"9. Each type of Honeywell's aforementioned control devices is separately catalogued and identified by number. If one becomes defective, it is readily replaced by ordering another device of the same number from Honeywell. Each such device retains its identity when installed and operating. Each is always recognizable by its physical appearance and the number permanently marked thereon. Plaintiff gives a one year guarantee, and if a control fails to function the company readily replaces it.

"10. Each of the control devices which is here in issue is tangible personal property in the hands of Honeywell. It is sold by Honeywell for use by the purchaser."

## Discussion

Board argues: "Reduced to its most basic elements, the dispute here is whether Honeywell must pay tax on the price of completed fixtures *which it manufactures* and installs in buildings belonging to others or only on its cost of the raw materials used in its manufacturing process."

Honeywell contends that Board's statement is inaccurate because it assumes that the Honeywell control system is a "fixture." Honeywell argues: "At the risk of oversimplification the Appellant respectfully suggests that a correct statement of the dispute between the parties is whether or not the manufacturer and installer under a lump sum contract of various components of a temperature control system, essential to the efficient use and beneficial enjoyment of commercial structures in which they are installed, are taxable on a measure based on the acquisition cost to Appellant of the materials going to make up said components at the time and place when and where acquired by Appellant."

■ Actually, the ultimate question which this court is confronted with is whether or not the "control devices" (as defined in finding 5) are "tangible personal property in the hands of Honeywell" and "sold by Honeywell [at retail] for use by the Purchaser" so that the "sales price"[5] derived from such sales should be included in Honeywell's gross receipts for purpose of computing the sales tax which Honeywell owes as a retail seller. Those are the critical findings and conclusions which govern the disposition of this appeal.

Stated in another form, the question is did Board have power to determine that some portion of the control devices were "fixtures" and levy and collect tax on such "fixtures" as fixtures rather than as materials incorporated in real property. Board did segregate out and tax as materials those components of the control devices such as conduits and electric wiring which were so permanently affixed to the structures as real property so as to become an integral permanent part thereof.

Honeywell claims that its sales tax obligation should be measured by "the acquisition cost to [Honeywell] of the materials going to make up

[5]Honeywell does not carry the burden of proving that in arriving at such "sale price" Board's action was arbitrary or capricious when it attempted to segregate out the portion of the total subcontract price fairly attributable to services and labor involved in installation. In fact Honeywell does not even contend that Board did so act. Honeywell's attack is on the power and authority of Board to make any segregation.

said components at the time and place when and where acquired by [Honeywell]." In other words, Honeywell contends that Board should have disregarded all value added to said "components" (control devices) by Honeywell's manufacturing process. We can find no factual or legal basis for any such contention.

If Honeywell had packaged its "control devices" for a particular building into a single package and had sold that package to an air conditioning subcontractor (other than Honeywell) for installation in the building,[6] no one would seriously question that Honeywell would have thereby made a retail sale of tangible personal property and that the amount of the "sales price" should be included in Honeywell's gross sales for purposes of computing sales tax. But Honeywell here argues that the result should be different if in addition to selling its control devices it also serves as the installing subcontractor and the "sales price" of the control devices and the sales price for the installation services are commingled and stated as only one price for both the control devices and the services of installation. Such commingling may present an accounting problem of segregation but the legal taxable consequences do not change. For over 40 years it has been the law of California that when the manufacturer of tangible personal property sells such property at retail, such sale is subject to sales tax even though such manufacturer may also install such tangible personal property in real property, when such tangible personal property may be properly classified as "fixtures." When a manufacturer of a fixture contracts to sell and install the fixture, the problem is not a legal problem of taxability, it is merely an accounting problem to determine what portion of the total contract price is attributable to the tangible personal property (fixture) and what portion is attributable to the labor and service of installing it. If a retail merchant sells a portable air conditioner which is clearly subject to sales tax, such sale does not become nontaxable merely because the merchant delivers it to his customer's home and "plugs" it into the electric outlet to make certain that it operates. But Honeywell in effect argues that this analogy is not accurate because in the case at bar *all* of its "control devices" became a part of the realty and were not "fixtures." Board and the trial court, based on substantial evidence, found otherwise. Honeywell did not carry its burden of proof in the trial court of proving that Board's action in breaking down the contract price was arbitrary, capricious, or had no reasonable or rational basis. (*L.A.J., Inc.* v. *State Bd. of Equalization,* 38 Cal.App.3d 549 [113 Cal.Rptr. 319].) What Honeywell is actually doing is questioning the validity of Board's basic

---

[6] A "do it yourself kit."

approach of distinguishing between fixtures and materials which are incorporated in and become a permanent part of the real property and in segregating out of the total contract price the value of labor and services in installing the fixtures and material.[7] Honeywell contends that that basic concept of distinguishing between fixtures and materials is invalid and that *Gen. Elec. Co.* v. *State Bd. of Equalization,* 111 Cal.App.2d 180 [244 P.2d 427], is outmoded and no longer good law. Honeywell's contention was decided adversely to it in *Coast Elevator Co.* v. *State Bd. of Equalization,* 44 Cal.App.3d 576 [118 Cal.Rptr. 818]. The court there held that Board's regulation 1521 was valid. Honeywell's attack on Board's regulation 1521 adds nothing (except for the points raised in its closing brief) to the attack of *Coast Elevator* on the same regulation. The regulation was upheld in *Coast Elevator* and its predecessor was upheld in *Gen. Elec. Co.* v. *State Bd., etc., supra.* For the same reasons, it is upheld here. Honeywell argues that *Coast Elevator* is not applicable to the case at bar because Honeywell had no dealings with the ultimate user or owner, but dealt only with other subcontractors or the general contractor "and accordingly [its sales] were sales at *wholesale* or *for resale* and hence were totally exempt from sales tax."[8] The major premise of the argument is in error. Honeywell produced no evidence (as it had the burden of proof to do) that the general contractor or other subcontractors were not the duly authorized representative of the owner. The Board and trial court had the right to assume that Honeywell therefore dealt with the owner or the owner's representative. Honeywell had the burden of proving that a sale by it was for purpose of "resale." (Rev. & Tax. Code, § 6091.) A subsequent sale is not a "resale" unless the second sale was "in the regular course of business *in the form of tangible personal property.*" (Italics ours.) (Rev. & Tax. Code, § 6007.) Honeywell contends that what the general contractor "sold" the owner was real property. Therefore, under Honeywell's contention what the general contractor "sold" was not a "resale" under the Revenue and Taxation Code definition of "resale" and the initial sale by Honeywell was not a sale for purpose of resale. Actually, Honeywell produced no evidence that the general contractor "sold" anything to the owner of the real property other than

---

[7] "Gross receipts" received by a retail seller of tangible personal property does not include "labor or services used in installing . . . the property sold." (Rev. & Tax. Code, § 6012.)

[8] Board argues that Honeywell should not be permitted to make such an argument because it was not made in the trial court or even in the appellate court until Honeywell filed its closing brief after the decision in *Coast Elevator.* However, we will disregard this objection and consider the point on its merits.

its services. Furthermore, in its sales and installation contracts Honeywell represented that the sales tax was included in the price.

■ Lastly, we consider Honeywell's contention that the trial court erred in finding that Board had not acted on Honeywell's claim for refund during the period July 1, 1964, to June 3, 1968. Board did not act. Honeywell had the right to elect to treat a failure to act as a denial of the claim in order to institute an action (Rev. & Tax. Code, § 6934). Such an allegation is prerequisite to suit and jurisdictional (Rev. & Tax. Code, §§ 6932, 6933). Honeywell filed an amended complaint. It alleged therein that it had exhausted its administrative remedies. That allegation was tantamount to an election to treat the failure to act as a denial of its claim. Therefore it did elect to treat Board's failure to act within six months as a rejection of its claims. The trial court erroneously concluded that Honeywell's action for refund of taxes for the period July 1, 1964 to June 30, 1968, was premature. The trial court should have concluded that Honeywell elected to treat the failure to act as a denial of its claim and the court should have proceeded to determine the validity of Honeywell's claims for refund during the period from June 30, 1964, to June 30, 1968.

The judgment insofar as it determines Honeywell's claim for tax refund during the period July 1, 1960, to June 30, 1964, is affirmed and insofar as said judgment refuses to determine Honeywell's claims for tax refund for the period July 1, 1964, to June 30, 1968, it is reversed with instructions to hear and determine the validity of Honeywell's claims for tax refunds for the period July 1, 1964, to June 30, 1968, in accordance with the views expressed herein.

Stephens, Acting P. J., and Ashby, J., concurred.

A petition for a rehearing was denied July 2, 1975, and appellant's petition for a hearing by the Supreme Court was denied July 30, 1975.