Filed 2/27/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ALINA BEKKERMAN et al., | C093763 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2015-80002242-CU-WM-GDS) |
| v. | |
| CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, James P. Arguelles, Judge. Reversed with directions.

Law Offices of Tony J. Tanke and Tony J. Tanke; Hattis & Lukacs, Daniel M. Hattis and Paul Karl Lukacs for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Tamar Pachter, Assistant Attorney General, Molly K. Mosley and Jennifer T. Henderson, Deputy Attorneys General, for Defendant and Appellant.

Greenberg Traurig LLP and Bradley R. Marsh for California Taxpayers Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

DLA PIPER LLP (US), Justin R. Sarno and Gaspard Rappoport for CTIA - The Wireless Association as Amicus Curiae on behalf of Defendant and Appellant.

1

In California, consumers may buy a cell phone for significantly less than its full price from a wireless service provider (carrier-retailer) if they also sign a contract to use the carrier-retailer's wireless services for a period into the future. This is a "bundled transaction." A longstanding state regulation measures sales tax on a cell phone purchased in such a bundled transaction by the cell phone's unbundled, full price.

Plaintiffs Alina Bekkerman, Brandon Griffith, Jenny Lee, and Charles Lisser challenge the regulation on two grounds: (1) it violates the Revenue and Taxation Code; and (2) it is invalid because it was not adopted in compliance with the Administrative Procedures Act (Gov. Code, § 11340 et seq.; the APA).

The trial court agreed with plaintiffs on their first claim but rejected the second. It also granted plaintiffs' petition for writ of prohibition, prohibiting defendant, the California Department of Tax and Fee Administration (the Department),[1] from applying the regulation to bundled transactions.

Both the Department and plaintiffs appealed. We conclude (1) the Department may allocate a portion of the contract price in a bundled transaction to the cell phone, and (2) the regulation was adopted in compliance with the APA. The judgment is reversed to the extent it invalidates the regulation.

FACTUAL AND PROCEDURAL BACKGROUND

Bekkerman bought a Samsung Galaxy S5 from Verizon for $249.99 as part of a bundled transaction. The bundle required Bekkerman to sign a two-year wireless service contract with Verizon. Bekkerman paid Verizon sales tax reimbursement that was calculated based on her cell phone's unbundled sales price of $599.99. Other plaintiffs

---

[1] The Legislature created the Department in 2017 and transferred to it most of the State Board of Equalization's tax-related duties, powers, and responsibilities. (Assem. Bill No. 102 (2017-2018 Reg. Sess.) § 1.) For the sake of clarity, we use "the Department" to refer to both the Board of Equalization and the Department of Tax and Fee Administration.

2

bought their cell phones at low prices in similar bundled transactions from carrier-retailers and paid sales tax reimbursements measured on their phones' unbundled prices.

Plaintiffs filed a complaint for declaratory and injunctive relief and a verified petition for prerogative writ. They sought declarations that (1) subdivisions (a)(4) and (b)(3) (the unbundled sales price provisions) of California Code of Regulations, title 18, section 1585 (Regulation 1585) are invalid because they unlawfully measure sales tax on the cell phones' unbundled sales price; (2) Regulation 1585 is void in its entirety because the Department failed to conduct adequate economic impact analysis in the rulemaking process. Plaintiffs further requested the trial court to enjoin the Department from enforcing the unbundled sales price provisions of Regulation 1585.

The trial court agreed with plaintiffs that Regulation 1585's measurement of sales tax is unlawful and granted the petition. It issued a writ prohibiting the Department from "applying Regulation 1585 to the discounted price of a wireless telecommunications device that a carrier-retailer charges in a sale bundled with wireless service." But the trial court rejected plaintiffs' claim that Regulation 1585 is void in its entirety for failure to comply with the APA.

The Department and plaintiffs timely appealed. On appeal, the Department filed a petition for writ of supersedeas, which we treated as a request for stay of judgment pending appeal and granted.

DISCUSSION

I

*Taxation of Bundled Transactions*

Plaintiffs contend Regulation 1585 contravenes three basic sales tax rules: (1) sales tax is measured by the parties' agreed price; (2) discounts are excluded from gross receipts; and (3) services are not taxable. We disagree. The agreed price in a bundled transaction consists of the initial payment and the subsequent monthly payments. The Department has the power to allocate a portion of these payments to the cell phone

3

and the remainder to services and levy sales tax accordingly.  The carrier-retailers do not offer a true discount on the cell phones because they are compensated by the monthly payments in a bundled transaction.

## A.  *Statutory and Regulatory Background*

The sales tax system is "intensely detailed and fact-specific," "governing an enormous universe of transactions."  (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1103.)  "The Legislature has delegated to the [Department] the duty of enforcing the sales tax law, and the authority to prescribe and adopt rules and regulations."  (*Henry's Restaurants of Pomona, Inc. v. State Bd. of Equalization* (1973) 30 Cal.App.3d 1009, 1020.)  This delegation of legislative authority "includes the power to elaborate the meaning of key statutory terms."  (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 800.)

Retailers in California must pay sales tax on "the gross receipts . . . from the sale of all tangible personal property."  (Rev. & Tax. Code, § 6051; further undesignated statutory references are to the Revenue and Taxation Code.)  "Gross receipts" means "the total amount of the sale . . . price . . . of the retail sales of retailers, valued in money, whether received in money or otherwise."  (§ 6012, subd. (a).)  "Sales price" in turn means "the total amount for which tangible personal property is sold . . . valued in money, whether paid in money or otherwise."  (§ 6011, subd. (a).)

In the context of sales tax, " '[t]he retailer is the taxpayer, not the consumer.' " (*GMRI, Inc. v. California Dept. of Tax & Fee Administration* (2018) 21 Cal.App.5th 111, 118, citing *Loeffler v. Target Corp., supra*, 58 Cal.4th at p. 1104, italics omitted.)  " 'The central principle of the sales tax is that retail sellers are subject to a tax on their "gross receipts" derived from retail "sale" of tangible personal property.  (§ 6051)  Despite the apparent simplicity of a tax based on gross receipts, a complex system of statutes and regulations minutely controls tax liability.  This system closely defines taxable sales, governs whether particular sales or transactions are subject to the tax, and defines what

4

constitutes "gross receipts." ' " (*Ibid.*) "[R]etailers are permitted but not required to obtain reimbursement for their tax liability from the consumer at the time of sale." (*Loeffler,* at p. 1108, italics omitted.) Although they are not taxpayers, consumers are "interested persons," who may seek declaratory relief as to the validity of any regulation promulgated by the Department. (*McClain v. Sav-On Drugs* (2019) 6 Cal.5th 951, 959, citing Gov. Code, § 11350, subd. (a).)

In 1995, the California Public Utilities Commission lifted the ban on bundled sales of cell phone and service. (*In Re Regulation of Cellular Radiotelephone Utilities* (1995) 59 Cal.P.U.C.2d 192, 196.) Retailers sought guidance from the Department regarding which portion of the receipts was subject to sales tax. After meeting with retailers and service providers, the Department decided the tax should be measured by the cell phone's unbundled sales price for three reasons: (1) to conform with the statutes, (2) to provide flexible tax application that would cover sales in the past, present, and future, and (3) for administrative ease. It recommended the unbundled sales price provisions to "provide the understanding and clarity necessary to interpret, implement, and make certain [s]ection 6012" and the application of tax to certain types of transactions.

Regulation 1585, subdivision (a)(3) defines a "bundled transaction" as "[t]he retail sale of a wireless telecommunication device which contractually requires the retailer's customer to activate or contract with a wireless telecommunications service provider for utility service for a period greater than one month as a condition of that sale." Subdivision (b)(3) further provides: "Tax applies to the gross receipts from the retail sale of a wireless telecommunication device sold in a bundled transaction, measured by the unbundled sales price of that device." "Unbundled sales price" is in turn defined in subdivision (a)(4) as "[t]he price at which the retailer has sold specific wireless

telecommunication devices to customers who are not required to activate or contract for utility service . . . as a condition of that sale."**2**

B.      *Standard of Review*

" 'The Legislature has granted the [Department] the power to make all rules necessary to administer and enforce the Sales and Use Tax Law.  [Citation.]  Because agencies granted such substantive rulemaking power are truly "making law," their quasi-legislative rules have the dignity of statutes.  When a court assesses the validity of such rules, the scope of its review is narrow.  If satisfied that the rule in question lay within the lawmaking authority delegated by the Legislature, and that it is reasonably necessary to implement the purpose of the statute, judicial review is at an end.' " (*GMRI, Inc. v. California Dept. of Tax & Fee Administration, supra*, 21 Cal.App.5th at p. 123.) Specifically, when the Department has "promulgated a formal regulation determining the proper classification of receipts" derived from certain transactions, the Department's classification "may be overturned only if such classification [is] arbitrary, capricious or without rational basis." (*Culligan Water Conditioning v. State Bd. of Equalization* (1976) 17 Cal.3d 86, 92.)

But where the administrative rules merely interpret a statute and do not implicate the exercise of a delegated lawmaking power, the agency's interpretation "commands a commensurably lesser degree of judicial deference." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11.)  "[T]he proper interpretation of a statute is ultimately the court's responsibility." (*American Coatings Assn. v. South Coast Air Quality Management Dist.* (2012) 54 Cal.4th 446, 462.)

---

**2**  We deny plaintiffs' request for judicial notice of the Retail Sales Tax Act of 1933's legislative history and contemporaneous interpretations of that act because they are irrelevant to our disposition.

*C.*     *Analysis*

California does not impose a tax on the performance of services.  (*Navistar Internat. Transportation Corp. v. State Bd. of Equalization* (1994) 8 Cal.4th 868, 874.)  In a transaction where the goods and services are distinct and each is a significant object of the transaction, the tangible property aspect of the transaction is taxed but the service aspect of the transaction is not.  (*Dell, Inc. v. Superior Court* (2008) 159 Cal.App.4th 911, 925.)

"[G]ross receipts on retail sales of tangible personal property are determined by the amounts received in consideration for sale of the property, not by profit realized or the gross income of the retailer."  (*Wallace Berrie & Co. v. State Bd. of Equalization,* (1985)*, supra*, 40 Cal.3d at p. 70.)  "The agreed price, as opposed to market value or some subsequently revealed price, dictates the appropriate sales . . . tax treatment."  (*Ibid.*)  But problems arise where, as here, the consideration for both the sale of tangible personal property and services is commingled in a single transaction.

In *Honeywell, Inc. v. State Bd. of Equalization* (1975) 48 Cal.App.3d 897 (*Honeywell*), a manufacturer of air conditioning control devices entered into lump sum contracts to sell and install its devices in buildings.  (*Id.* at pp. 901-902.)  The manufacturer argued the Department had no authority to segregate the contract price and attribute a portion of it to the sale of the devices and a portion to installation services.  (*Id.* at p. 903, fn. 5.)  The court rejected this argument, reasoning that the commingling of the device sale and installation services "may present an accounting problem of segregation but the legal taxable consequences do not change."  (*Id.* at p. 904.)  "When a manufacturer of a fixture contracts to sell and install the fixture, the problem is not a legal problem of taxability, it is merely an accounting problem to determine what portion of the total contract price is attributable to the tangible personal property (fixture) and what portion is attributable to the labor and service of installing it."  (*Ibid.*)  The court ruled in favor of the Department, concluding the manufacturer failed to prove that the

7

Department's "action in breaking down the contract price was arbitrary, capricious, or had no reasonable or rational basis." (*Ibid.*)

Here, consumers cannot obtain a cell phone for the special price unless they also agree to a wireless service contract. Thus, as in *Honeywell*, the carrier-retailers commingle the cell phone sale and the wireless services in a bundled contract. The consideration received for the cell phone and the services in this bundled contract is the initial payment plus 24 subsequent monthly payments. The parties do not dispute that only the payment for the cell phone is taxable, but they disagree on how to measure the payment. Thus, we face an accounting problem of segregation, not a legal problem of taxability. (*Honeywell, supra*, 48 Cal.App.3d at p. 904.) Section 6012 provides no guidance for this accounting problem. Regulation 1585 fills the gap, effectively attributing the portion of the contract price that is equivalent to the unbundled sales price to the cell phone, and the rest to the wireless services. Only the portion of the contract price allocated to the cell phone is subject to sales tax.

This segregation allows for consistent tax measurement, as the bundled sales price changes constantly depending on the market and the carrier-retailer. It further resolves the industry's confusion over the proper allocation of the receipts. We cannot say that the Department's allocation of the contract price is arbitrary, capricious, or had no reasonable or rational basis.[3] (See *Honeywell, supra*, 48 Cal.App.3d at p. 904.)

We reject plaintiffs' contentions that the agreed price for the cell phones is the bundled sales price, or that the bundled sales price is a discount. These contentions

_____

[3] After oral argument, we granted plaintiffs' request for both sides to submit supplemental letter briefs on *Honeywell*. Plaintiffs contend *Honeywell* is distinguishable because the carrier-retailers and consumers here actually agreed to a sales price for the cell phone. But they ignore the fact that consumers also agreed to the wireless service contract as part of the bundled transaction and committed to pay for both. Thus, as in *Honeywell*, the Department is tasked with allocating the bundled contract price to taxable and nontaxable aspects of the transaction.

ignore the reality that consumers can obtain the bundled sales price only by also signing the wireless service contract. In other words, the consideration for cell phone and the wireless services is commingled in such a bundled transaction. (See *In re Regulation of Cellular Radiotelephone Utilities, supra*, 59 Cal.P.U.C.2d at p. 205 ["it is clear that the discounts on cellular equipment are supported by the high profits on cellular service"].) Thus, it is up to the Department to allocate the total contract price to each aspect. (*Honeywell, supra*, 48 Cal.App.3d at p. 904.) We accept that the carrier-retailers charge the same rate for their wireless service plans regardless of whether the consumers also purchase a bundled cell phone. But this is immaterial because a sale of nontaxable wireless services and a bundled sale are different transactions.

Amicus curiae California Taxpayers Association's reliance on *Pixley v. Commissioner of Revenue* (Mass. App. Ct. 2023) 213 N.E.3d 1164 is misplaced. There, Massachusetts's Department of Revenue issued a directive imposing tax on a bundled cell phone's wholesale cost and the wireless services. (*Id.* at p. 1168.) Because consumers pay less for the cell phone in a bundled transaction than its wholesale cost, the directive imposed tax on "more than the total money the consumer pays across the entire transaction." (*Ibid.*) The court therefore concluded the directive violated the Massachusetts tax statute that imposes sales tax on the "total amount paid." (*Id.* at p. 1169.) Unlike the directive in *Pixley*, Regulation 1585 does not impose tax on more than the total money consumers pay for the bundled contract. The *Pixley* court's approach is harmonious with our approach of considering the bundled transaction as a whole: "Where the cell phone is sold below wholesale cost, the vendor must be making up the difference through the sale of wireless services . . . . Obviously, if the vendor does not make up for selling the cell phone below cost through additional sales, it will be operating at a loss, and the laws of business say that it will not be operating very long." (*Id.* at p. 1170.)

9

Our conclusion is further bolstered by Regulation 1585's history. An agency's interpretation is likely to be correct if it " 'has consistently maintained the interpretation in question, especially if [it] is long-standing.' " (*Yamaha Corp. of America v. State Bd. of Equalization, supra*, 19 Cal.4th at p. 13.) "When an administrative interpretation is . . . long standing and has remained uniform, it is likely that numerous transactions have been entered into in reliance thereon, and it could be invalidated only at the cost of major readjustments and extensive litigation." (*Whitcomb Hotel, Inc. v. Cal. Emp. Com.* (1944) 24 Cal.2d 753, 757.)

Regulation 1585 became operative in 1999 and has not been amended since. During the same time, the Legislature amended section 6011 (defining sales price) and section 6012 (defining gross receipts) twice each. (Stats. 2002, ch. 593, §§ 1, 2; Stats. 2000, ch. 923, §§ 1, 1.3.) We presume "these amendments were made with full knowledge of the construction which had been placed upon the statute by" the Department. (*Coca-Cola Co. v. State Bd. of Equalization* (1945) 25 Cal.2d 918, 922.) Yet none changed the definition of sales price or gross receipt, or otherwise invalidated Regulation 1585. This indicates Regulation 1585 is consistent with the Legislature's intent. (*Action Trailer Sales, Inc. v. State Bd. of Equalization* (1975) 54 Cal.App.3d 125, 133-134.)

Meanwhile, the Legislature failed to enact five proposed bills that would have limited sales price and gross receipts in a bundled sale to the bundled sales price. (Assem. Bill No. 1021 (2015-2016 Reg. Sess.); Assem. Bill No. 2691 (2013-2014 Reg. Sess.); Sen. Bill No. 1086 (2011-2012 Reg. Sess.); Assem. Bill No. 279 (2011-2012 Reg. Sess.); Assem. Bill No. 2320 (2005-2006 Reg. Sess.).) We accept that, as plaintiffs point out, these bills "faded away" without prompting a committee vote or reaching the floor of the Senate or the Assembly. Our Supreme Court has declined to infer legislative acquiescence from "a bill's mere failure . . . to clear committee in the legislative chamber where it was introduced" or "solely from the fact these bills died without a floor vote."

10

(*Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217, 243-244.) But it also noted courts "have sometimes found legislative acquiescence in the construction of a statute where, over a long period of uniform judicial or administrative treatment, the Legislature has addressed the law in question on multiple occasions, yet has not disturbed the settled interpretation." (*Id.* at p. 243.) The legislative inaction here, along with the longevity of Regulation 1585, its uniform administrative treatment, and the amendments to sections 6011 and 6012, suggest that Regulation 1585 is consistent with the Legislature's intent. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 178.)

## II

*Procedural Challenge to Regulation 1585*

In their cross-appeal, plaintiffs contend that Regulation 1585 was not adopted in compliance with the APA because: (1) the Department provided no evidence during the rulemaking process to support its assessment that Regulation 1585 would have no adverse economic impact on businesses and individuals; and (2) the Department failed to renotice the public and to hold a second public hearing on the changes it made to Regulation 1585, subdivision (b)(3). We reject both contentions.

A.    *The Department's Adverse Economic Impact Assessment*

In 1998, the Department proposed Regulation 1585 in response to confusion among noncarrier retailers "over what portions of the retailers' receipts were included in [the] taxable measure." In a formal issue paper attached to the Department's initial statement of reasons for rulemaking, the Department noted that, because the commissions or rebates these retailers received from carriers were considered part of the gross receipts for the sale of the cell phone, the retailers also "expressed concern with the administrative difficulty of tracking and properly reporting the commission component of gross receipts received on wireless device transactions."

11

The Department determined that the proposed Regulation 1585 would "not have a significant adverse economic impact on small businesses" and would have "[n]o impact" on individuals in both the initial statement of reasons and the final statement of reasons.

"[T]he APA establishes basic minimal procedural requirements for rulemaking in California." (*John R. Lawson Rock & Oil, Inc. v. State Air Resources Bd.* (2018) 20 Cal.App.5th 77, 111.) The APA provision in effect during Regulation 1585's rulemaking process provided that "[s]tate agencies proposing to adopt or amend any administrative regulation shall assess the potential for adverse economic impact on California business enterprises and individuals." (Former Gov. Code, § 11346.3, subd. (a).) If the state agency "determines that the action will not have a significant adverse economic impact on business . . . it shall make a declaration to that effect in the notice of proposed action. In making this determination, the agency shall provide in the record facts, evidence, documents, testimony, or other evidence upon which the agency relies to support that finding." (Former Gov. Code, § 11346.5, subd. (a)(8).) In its final statement of reasons, the agency must update the information contained in the initial statement of reasons and address any objections or recommendations regarding the proposed rules, but it was not required to provide a new assessment of adverse economic impact. (Former Gov. Code, § 11346.9.) A regulation may be declared invalid if "[t]he agency declaration pursuant to paragraph (8) of subdivision (a) of [s]ection 11346.5 is in conflict with substantial evidence in the record." (Gov. Code, § 11350, subd. (b)(2).)

"We review the Department's initial determination to determine that the Department has substantially complied with its obligations, and whether it is supported by some substantial evidence." (*California Assn. of Medical Products Suppliers v. Maxwell-Jolly* (2011) 199 Cal.App.4th 286, 307.) "[I]nferences that are the product of logic and reason may be substantial evidence." (*Id.* at p. 308.) "[A]n agency's initial determination of economic impact need not exhaustively examine the subject or involve extensive data collection." (*Western States Petroleum Assn. v. Board of Equalization*

12

(2013) 57 Cal.4th 401, 429.) " 'The ultimate test is whether it is reasonable . . . to make the ruling in question in light of the whole record.' " (*California Assn. of Medical Products Suppliers v. Maxwell-Jolly*, at p. 308.)

Here, Regulation 1585, subdivision (b)(3) allows retailers to collect sales tax reimbursement measured by the unbundled sales price from consumers. The Department may logically infer from this subdivision that Regulation 1585 would have no adverse economic impact on retailers because they transfer the impact to consumers.

Moreover, the formal issue paper observed that noncarrier retailers were generally able to recoup the discount on the cell phone through commissions or rebates paid by the carriers. Thus, the commissions were considered part of the gross receipts for the sale of the bundled cell phone. In other words, the gross receipts for the sale of a bundled cell phone would be the same whether the noncarrier retailers pay sales tax once on the unbundled sales price or pay two different sales taxes on the bundled sale price and the commissions received from the carriers. The former merely lessens the administrative burden of these retailers. A consumer pays the same sales tax reimbursement in both situations.

Although the Department did not discuss the economic impact on carrier-retailers, it was not required to do so. (See *Western States Petroleum Assn. v. Board of Equalization, supra*, 57 Cal.4th at p. 429.) Substantial evidence therefore supports the Department's assessment that Regulation 1585 would have no adverse economic impact on businesses and individuals.

B.      *Notice to the Public*

The initial draft of Regulation 1585 published before the public hearing provided in subdivision (b)(3) that "[t]he retailer may not collect tax or tax reimbursement from either the end-use customer or the person selling the device to the end-use customer." At the public hearing, participants requested the Department to strike subdivision (b)(3) because it was "contrary to other provisions in the law regarding sales of tangible

13

personal property." The Department complied and deleted the original subdivision (b)(3). In the revised draft, the Department added a new subdivision (b)(3) that provided: "The retailer of the wireless telecommunication device . . . may collect tax or tax reimbursement from its customer measured by the unbundled sales price." The Department sent the revised draft to parties that had commented or asked to be informed of the revision but received no additional comments. The revised draft was adopted as Regulation 1585.

"No state agency may adopt, amend, or repeal a regulation which has been changed from that which was originally made available to the public . . . unless the change is (1) nonsubstantial or solely grammatical in nature, or (2) sufficiently related to the original text that the public was adequately placed on notice that the change could result from the originally proposed regulatory action." (Gov. Code, § 11346.8, subd. (c).) The public is adequately placed on notice of an amendment if it is addressed at the public hearing. (*Californians for Safe Prescriptions v. California State Bd. of Pharmacy* (1993) 19 Cal.App.4th 1136, 1144-1145.)

Here, the original subdivision (b)(3) addressed the issue of retailers' ability to collect sales tax reimbursement from consumers. Participants at the public hearing objected to the original subdivision (b)(3) and requested its deletion. The public was therefore adequately placed on notice that the Department could remove the language banning retailers from collecting sales tax reimbursement from consumers. The revised subdivision (b)(3) was consistent with this notice by allowing the sales tax reimbursement. This is distinguishable from *Wendz v. California Dept. of Education* (2023) 93 Cal.App.5th 607, where the court concluded an agency must renotice the public when the final draft of a regulation prohibited parent council members from using alternates but the initial draft was silent on such use. (*Id.* at pp. 647-648.)

14

## DISPOSITION

The portion of the judgment finding Regulation 1585 violates the Revenue and Taxation Code and granting the writ of prohibition is reversed.  The portion of the judgment finding the rulemaking process of Regulation 1585 complied with the APA is affirmed.  The matter is remanded.  On remand, the trial court is directed to enter an order denying the petition for writ of prohibition.  The Department shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


           /s/
           MESIWALA, J.


We concur:


 /s/
HULL, Acting P. J.


 /s/
BOULWARE EURIE, J.